Thank you, Chief Judge. May it please the Court. Judge Colleton, Judge Strauss, my name is Andrew Schlafly, representing myself here. I'm a member of the Bar of the Court. I'm speaking here on behalf of Appellant myself. And this is a long-running issue of a takeover attempt of a membership organization founded by my mother, Phyllis Schlafly. She built it for 41 years. It got into the spring of 2016. The context was she then endorsed Donald Trump. There were some people on the board who were very unhappy about that. They proceeded to attempt to take over the organization. I've attached my original petition, a letter from Phyllis Schlafly asking those board members to resign. That's Appendix 28A. They refused to resign, and they proceeded to try to take over and revamp the leadership of the organization. But it's a membership organization, a membership corporation, and that's a special type of entity under Illinois law. Both sides agree that Illinois law applies here. And when it's a membership corporation, there are different provisions in the statute which apply. The bylaws have to be taken very seriously. And standard takeover tactics of redoing the board, changing the bylaws, don't necessarily work when the membership opposes what's being done by the board. And that's the case here. And it's in my verified petition that the board is doing in taking over the organization. The procedural posture here on appeal is that the trial court dismissed my complaint for failure to state a claim. So on appeal the record is my verified petition. I call it a petition because it was originally filed in state court and it was removed to federal court. And that's the record on appeal. The other side has tried to put into the case, they have a supplemental appendix, a lot of just not in my petition. This is on a motion to dismiss that was granted by the court below and so we're on appeal. And it's that petition that is on appeal. And the central issue is whether it was proper for these directors to call a special board meeting, not give notice of their intent to change the bylaws, and then remove myself and several other directors who were loyal to Phyllis Schlafly, remove us from the board while prohibiting proxy voting. And so in their notice they say no proxy voting will be allowed. Well there's a provision of the Illinois statute that says if it's a membership corporation, then you have to allow proxy voting, there has to be a two-thirds vote, it's a higher threshold to remove directors. They didn't do that. So that's the central issue on appeal. Also how they changed the bylaws at that meeting without providing notice. They removed Robert's rules of order from the bylaws, which was completely improper. I mean you have to have a parliamentary system backing up your bylaws so that membership has some way to have rights to exercise their rights. Well they just took it out of the bylaws completely. They did another change as well that disenfranchised membership, so I'm objecting to that as well. And I feel I did state a cause of action. I feel it was legal error for the trial court to dismiss. Now were you representative of all the members or were you acting as an individual member to assert rights? That's an excellent question Chief Judge, and I was representative of all the members in the caption here, Appendix 17A, it writes Andrew Schlafly in his official capacity as both a director and member of Equal Forum. It wasn't a class action, but right in my caption I'm suing both as a director and as a member of the organization. But then you could only be representing your particular interest as a specific member, not the interest of other members. That's right Chief Judge. I'd like to mention the attorney's fees issue here and then leave a little time for rebuttal. The timing below was such that I filed a motion to remand the case back to state court, because that's where the case was originally filed and I thought it belonged in state court. That jurisdictional issue was not decided for much of 2017. Then in September, the first week of September 2017, the trial judge denied my motion to remand, said that there is federal jurisdiction, denied Equal Forum's motion dismissed. He said I'm taking the case. He expressly granted me leave to file for a preliminary injunction. The annual meeting was coming up a week later when Equal Forum was going to revamp the board again and make all sorts of additional changes. So I had a week there. So rather than waive my rights, I immediately filed for injunctive relief to enjoin the annual meeting with respect to these issues. And in a complete surprise to me, the trial judge, Sue Esponte, awarded attorney's fees against me for bringing that motion. And I have no problem with attorney's fees where it's appropriate and I'm not claiming I'm any other way to do that. The meeting's coming up. The judge just accepted jurisdiction to assert my rights. He gave me leave to move for preliminary injunction to assert my rights. I had to file a motion in that window of time and yet Sue Esponte awarded attorney's fees against me and then he imposed the attorney's fees without an affidavit by the other side and so on. To the trial judge's credit, at that time, it wasn't really clear how this was going to shake out. Later, the Madison County Trial Court ruled in my favor and held that that initial takeover meeting by these directors in 2016 was invalid and all actions added are void. So. Did you include the attorney's fee in your notice of appeal for raising that? I certainly intended to, Chief Judge. I was very careful about that. Now, where would that be in the appendix here? Let's see. Notice of appeal 218. So I list all these docket numbers and the would that have been? 63, I think. 63. At least that's the order in the addendum, document number 63. Number 63. It may have been because the attorney's fees was on that prior appeal that, Your Honor, you sat on that interlocutory appeal and probably because that was pending, I did not list it here. So, Chief Judge, you may feel deja vu here. I argued before you in St. Louis and that appeal was still pending so that's probably why I didn't specifically list 63 here but I certainly intended to appeal that and the ruling in that case did reserve ruling on the attorney's fees issue so hopefully that would protect me as well because in the Your Honor, here on page 3, it says that it's without prejudice to the reviewing the attorney's fees issue. I preserve the rest of my time. Thank you, Mr. Shaffer. Mr. Bousquet. Good morning, Your Honor. As Mr. Schlafly pointed out, this is a diversity case where Illinois law that statute is at 805 ILCS 105. All of the statutory references in our brief and in my presentation today will refer to that chapter. I did want to point out Mr. Schlafly points out repeatedly Delaware law and Delaware chancery decisions in his brief but those are not particularly helpful because Delaware doesn't have any not-for-profit corporation law. Illinois, by contrast, has a comprehensive statute governing all aspects of non-profit corporate governance and the act sets forth requirements for non-profit corporations and treats members of a non-profit very differently from directors. Now Mr. Schlafly has referred to Ego Forum as a membership corporation. While it's true that the corporation did have members, the bylaws are very clear that they have very little involvement in the governance of Ego Forum. In fact, the bylaws specifically state that all powers of the organization shall be exercised by the board directors. The only power that the members have or at least had under the bylaws in effect in January of 2017 is to elect a single at-large director from three nominees selected by the board. So turning to this proxy argument of which Mr. Schlafly claims, just initially Illinois law is fairly clear that different sections of the same statute should be viewed as a whole and interpreted to give them harmonious effect. That's the People v. McCarty case from the Illinois Supreme Court. Mr. Schlafly wants to argue that section 108.35c1 requires the corporation to allow proxy voting by members and directors. That's not what it says. Looking at 805 ILCS, well the section is 108.35, there are two potentially applicable revisions. The first one is subsection b that's cited in our brief. That states that in the case of a corporation with no members or with no members entitled to vote on directors, a director may be removed by the affirmative vote of a majority of the directors in office present and voting at a meeting of the board in which a quorum is present. And we took the position that that section applies because in this instance these, the meeting in sought to remove were not the at-large directors. So the membership had absolutely no right to vote on those directors. Does that work though? Because I mean the problem is some of the directors, I mean there's at least one director I believe that the membership can actually vote on. Correct. That's correct. And so you know we've taken the position that it, you know, you look to the specific act that the corporation is attempting to affect. But even if that section doesn't apply, it doesn't matter because even under section c, there's no requirement that directors be allowed to vote by proxy. In fact, that's directly contrary to another section of the same act which is section 108.05d which very clearly states that no director may act by proxy on any matter. So looking towards the section upon which Mr. Schlafly relies, it states in the case of a corporation with members entitled to vote for directors, no director may be removed except as follows. A director may be removed by the affirmative vote two-thirds of the votes present and voted either in person or by proxy. Now this section doesn't mandate that the corporation allow voting by proxy. It's permissive. And given the outright prohibition under 808.05d, it simply doesn't apply to directors. Directors may not vote by proxy on any matter. And this is consistent with the rest of the statute. If you look to subsection 4 which Mr. Schlafly conspicuously avoids talking about, it states that if a director is elected by a class of voting members entitled to vote, directors or other electors, that director may be removed only by the same class of members entitled to vote, directors or electors, which elected the director. That's kind of a mouthful, but basically it says that if this director that you're seeking to remove is elected by the directors, then only that group of people can remove it. By contrast, if it's the at-large director, which at the time could be elected by a vote of the membership, only the membership can remove that director. So we were dealing with three directors that were elected by a board of directors. They could only be removed by directors, and those directors were not allowed to be to vote by proxy. So this subsection C4 shows you that there are some situations where proxy voting would not be prohibited, and that's when members are actually entitled to vote to remove the director, but that's not the case here. The other issue, well there's another section that's relevant to the difference between how members are treated and how directors are treated, and that's 107.03f. It states that where the articles of incorporation or bylaws provide that a corporation shall have no members, or this is the key part, where a corporation under its bylaws has no members entitled to vote on a provision of this act providing notice to the presence of, or the vote, consent, or other action by members of the corporation shall be satisfied by notice to the presence of, or the vote, consent, or other action of the directors of the corporation. So repeatedly the statute treats directors and members differently, and it's completely consistent that the Illinois legislature would allow directors, allow members to vote by proxy, but not directors. The second issue with the proxy voting is mutinance. There are two points here. First of all, the vote to remove Mr. Schlafly, there were only nine members of the board at the time that he was removed. Three members, the three directors, the directors that were ousted, did not show up, did not vote. Remaining directors did vote, and the vote was six to zero, which satisfies the two-thirds threshold. So with that regard to proxy voting, even if proxy voting was allowed, they still would have been removed. Perhaps more significantly, Mr. Schlafly's two-year term under the bylaws would have expired in September of 2017. So his claim is simply moot. We cite several cases in our briefs from other circuits where when the board of directors term ends prior to the declaratory judgment or injunctive relief that's being sought, then there's nothing left for the court to do unless there's some sort of money damages claim, which there is not here. Turning quickly to the bylaws issue, again, our position and the judge found it convincing that Mr. Schlafly's failed to satisfy his burden of proof because he didn't state that the vote was not unanimous. And bylaws changes don't require notice under the legal form bylaws for unanimous action. It's only where the action is contested is notice required. The unanimous vote, and I'm reading from the bylaws, unanimous vote of the board of directors or by the affirmative vote of two-thirds of all the directors then serving provided notice of the proposed change is mailed to each director at least 10 days in advance of the meeting. So there's two parts there. You can change the bylaws by unanimous vote or by the affirmative vote of two-thirds if notice is mailed. And it really doesn't make sense to have these two different standards. Mr. Schlafly tries to argue that notice is required under both. Why would the and the distinction is obviously that notice is irrelevant if all of the members of the board are participating. And that was the case at the January 2017 meeting. And so our position is that under Twombly, Mr. Schlafly had to actually state the factual basis for why notice was inadequate of changing the bylaws. And because he doesn't allege that there was not unanimous action on the part of the board, his claim fails. The second issue we have as to the bylaws is the waiver issue. We cite Tolan v. Ashcroft, which this court has gone kind of a couple different ways with that. And as to the legal claim brought by Mr. Schlafly under the proxy voting, he may be correct that he has not waived by filing an amended petition. But the second issue, the bylaws issue, the court dismissed that because the court found that he didn't plead sufficient facts to show that he was actually injured or how he was injured by the changing of the bylaws. And when he, so that wasn't a legal deficiency, it was a factual deficiency. And he did not replead that case, in fact, that claim. In fact, he abandoned it in favor of a breach of fiduciary duty claim. So I hear you on the first claim, the proxy voting, actually scaling back on your Tolan argument based on acuity. Is that the reason why you're doing it? I think that's accurate. I mean, obviously, the court and bank has not ruled on this issue. I mean, it's an open question. But I think we have a much stronger argument as to the bylaws change. And I don't think, frankly, we need Tolan on the proxy claim. I see that my time is up. Thank you very much. Thank you, Mr. Bousquet. Mr. Chaffley, your rebuttal. So I allege multiple acts of misconduct by legal form in my petition. It's not just the procedure. I focused on the procedure on appeal because I think those are clear-cut examples. But I allege bad faith. I allege the membership is overwhelmingly opposed to what they're doing. And there are multiple allegations where I think I do state valid cause of action for a takeover. With respect to the proxy issue, though, the statute is clear that if the corporation has members, then it goes in and talks about these conditions about proxy voting must be allowed. It's when the corporation has members. It's not if the voter is a member. They could have said that. They could have said if the voting person is a member, then they can vote by proxy. They get confused very fast if there are going to be different rules for allowing proxies for some people in a nonprofit group, but not for others. Sometimes it's allowed. Sometimes it isn't. Directors, of course, are members, too. And if they're voting, sometimes they can vote by proxy in an election. If it's one candidate, they can't vote by another. It gets confusing. Isn't there some ambiguity here? Because the way I read the affirmative vote of two-thirds of the votes the president voted is that it would apply when members are voting, but not necessarily when directors are voting. In other words, it's an acknowledgment that in some cases, proxy voting is allowed. Well, even Eagle Forum has interpreted it to be a two-thirds requirement. Now, they argue outside of the record to say they had six out of nine. That's not anywhere in the petition, so I urge you not to rely on that. But even they say that that two-thirds requirement would be required to remove a director. We're removing directors here. It's like an impeachment. I mean, we want it to be hard. Illinois wants it to be difficult. Being a membership corporation, they're supposed to be representing membership. And the basic disconnect here is they think the board can do whatever it wants. Just finally, on the bylaws, which I attached to my petition, the grammar is clear. That notice must be provided, whether it's a unanimous vote of the directors who are present or a two-thirds vote of all directors. That's why there's a distinction there. It's unanimous of who's present, two-thirds of all directors. Notice must be required in all those situations. And they didn't do it. Thank you, Mr. Schaffley. Thank you. Thank you also, Mr. Bousquet. We appreciate your presence before the court this morning, the argument you've provided us, and we'll take the case under advisement.